**Russell F. ROSE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2–1280A398.

Court of Appeals of Indiana, Second District.

Feb. 22, 1982.

Rehearing Denied April 8, 1982.

2. The same standards apply in civil and criminal cases. *Baker v. Gausin, supra.*

Forrest Bowman, Jr., Bowman, Dillon & Wagoner, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Russell F. Rose (Rose) appeals his conviction of Battery, Class C Felony (I.C. 35–42–2–1, Repl.1979), alleging the trial court erred:

1) in failing to give the jury certain tendered instructions on the issue of mistake of fact;

2) by improperly limiting cross-examination of a state's witness; and

3) in imposing a manifestly unreasonable sentence.

We remand for further proceedings involving Rose's sentence and in all other respects we affirm the judgment.

The facts most favorable to the state are:

On May 9, 1980, Steven Williams (Williams) drove into the service station owned and operated by Rose and asked an attendant to give him ten dollars worth of gas. When the pump reached $9.33 Williams told the attendant that he said he only wanted two dollars worth. The attendant and Rose's wife offered to siphon the difference

from Williams' tank, but Williams refused. At this juncture Rose's wife called Rose over and it was suggested that Williams leave his car and get enough money to pay the bill. Williams, responding with profanity, spurned this offer and remained in his car. Williams then started to pull away with Rose running along the left side of the car touching it near the driver's door. Williams cut his wheels sharply to the left and Rose, who had produced a handgun he was licensed to carry, fired one shot. The bullet struck Williams in the head resulting in his death.

Rose was indicted for murder and convicted of Class C Felony Battery. He was sentenced to an executed term of seven years imprisonment.

## I

Rose claims error in the trial court's refusal to give his tendered final instructions numbered 2, 4, and 9.

The criteria used in determining whether reversible error results from the failure to give tendered instructions are:

1. Does the instruction correctly state the law?
2. Is there evidence in the record to support the giving of the instruction?
3. Is the substance of the tendered and refused instruction covered by any other instruction which was given?

*Davis v. State*, (1976) 265 Ind. 476, 335 N.E.2d 836, 838.

The text of the proposed instruction no. 2 reads:

"If the defendant, Russell Rose, reasonably believed that Steven Williams was committing a felony involving the imminent danger of bodily injury to a human being, and reasonably believed it was necessary to use deadly force to effect the arrest or prevent the escape of Steven Williams, then under the law he was privileged to use said force, even if he was mistaken in one or more, or indeed in all of his beliefs, and under such circumstances he would be entitled to an acquittal."

■ The trial court properly refused the instruction as an inaccurate statement of the law. Tendered instruction no. 2 erroneously states deadly force may be used to effect the arrest or prevent the escape of a person committing a forcible felony. I.C. 35–41–3–3 (Burns Code Ed., Repl.1979) specifically provides deadly force may be used *only* as provided in I.C. 35–41–3–2 (Burns Code Ed., Repl.1979). I.C. 35–41–3–2 specifically provides deadly force is justified *only* if a person reasonably believes such force is necessary to prevent (1) serious bodily injury to himself or a third person or (2) a felony involving the use or threat of force against a human being or imminent danger of bodily injury to a human being. Thus, deadly force may *never* be used by a non-law enforcement officer to effect the arrest or prevent the escape of a felon. The justified deadly force is to prevent injury, the imminent danger of injury or force, or the threat of force, *not* to effect an arrest or prevent escape. Consequently, Rose's tendered instruction no. 2 is erroneous and was correctly refused by the trial court.

■ Rose's tendered final instruction no. 9 is similarly erroneous. The text of the instruction reads:

"At all times material herein, there was in full force and effect, the following statute of the State of Indiana, to-wit:

'35–41–3–7. Mistake of Fact

Sec. 7. It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense. As added by Acts 1976, P.L. 148, Sec. 1. Amended by Acts 1977, P.O. 340. Sec. 12.' "

Rose argues the instruction was necessary because its omission left the jury "completely uninstructed on the proposition that the defendant was entitled to an acquittal if he was honestly mistaken as to whether or not the defendant was actually committing a forcible felony."

If Rose was "mistaken" as to whether or not the victim's conduct (1) involved the use or threat of force against any person or (2) constituted an imminent danger of bodily injury to any person, that mistake is not a mistake of fact within the confines of I.C. 35–41–3–7 (Burns Code Ed., Repl.1979) because the mistake would not negate culpability.

The required culpability for battery is intentional or knowing. The intentional or knowing, however, refers to the *actor's* conduct. I.C. 35–41–2–2 (Burns Code Ed., Repl.1979) requires culpability only with respect to every material element of the *prohibited conduct.*[1] It is not and cannot be disputed that there is evidence in the record that Rose's conduct in the use of the gun was intentional or knowing. Rather, his theory is the resultant death was justified. Justification presumes culpability as that term is defined by I.C. 35–41–2–2 and incorporated within the mistake of fact statute, I.C. 35–41–3–7. Without evidence of any mistake of fact, the trial court correctly refused Rose's tendered instruction no. 9.

■ Finally, Rose complains the trial court erroneously refused his tendered final instruction no. 4, which reads:

"In determining whether or not he may use deadly force against one he believes to be committing a forcible felony, a man has a right to act upon appearances of actual and immediate danger, if he reasonably believes such apparent danger exists. The danger need not be actual. It need be only apparent to a reasonable person under the circumstances. The law protects persons who feel compelled to act at such times even though in retrospect it is proved they have erred. The law takes into consideration all the surrounding circumstances under which the events took place."

We disagree because we conclude the substance (as argued by Rose) of the tendered and refused instruction was covered by other instructions which were given.

Forcible felony was properly defined for the jury as

"a felony that involves the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being."[2]

Therefore, the issue is whether the jury was further informed that a reasonable mistake as to whether force was used or threatened against a human being or as to whether there was imminent danger of bodily injury to a human being does not preclude the defense of justification as provided by I.C. 35–41–3–2(a).

The trial court's final instruction no. 15 read, in part:

"At all times material herein, there was in full force and effect, a statute of the State of Indiana, which in pertinent part is as follows:

.    .    .    .    .

"35–41–3–2 Use of force to protect person or property

"Sec. 2. (a) A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony."

The language of the statute includes the concept of reasonable mistake as to the use or threat of force or the imminent danger of bodily injury. That concept is inherent

1. The 1976 Ind.Acts, P.L. 148 § 1 p. 722 read:
   "Unless the provision of law defining the offense provides otherwise, if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct *and its attendant circumstances.*" (emphasis added.)

However, 1977 Ind.Acts, P.L. 340, § 4 p. 1538 deleted the phrase "and its attendant circumstances."

2. The trial court's final instruction no. 16 quoted the definition of forcible felony set forth in I.C. 35–41–1–2 (Burns Code Ed., Repl.1979).

within the words "reasonably believes" which must be read together. The lay usage of the word "belief" includes a margin of error for mistake. An assertion that one believes something is true is not a statement that it is in fact true. Inherent in the use of the very word "belief" is the concept of perception—how one perceives the data which forms the basis of the belief. Its coupling with the qualifying adjective "reasonable" strengthens the concept of error inherent in a belief. If belief meant truth and did not include the possibility of error, the use of the word "reasonable" would be superfluous because truth is absolute. There is no such thing as "reasonable" truth. There is reasonable belief. Consequently, the statute which sets forth the element of the defense of the use of force constituted a sufficient and adequate instruction on the concept within Rose's tendered instruction no. 4. The trial court did not err in refusing it.

## II

■ Rose asserts the trial court committed reversible error in refusing to let him examine the victim's mother with respect to the "underlying circumstances of the arrest of Steven Williams (the victim) at his home in April of 1980." Rose argues his inquiry was proper because the decedent's character had been injected into the case during the State's direct-examination of Mrs. Williams as to her son's employment, his activities and financial circumstances on the day of his death, and, in particular, by the following exchange:

"Q. Was Steven a loud spoken or soft spoken person?

A. Soft.

Q. Which of your kids that lived at home in May of this year did you depend on the most?

A. Steve."

We disagree. Considering the wide latitude given to a trial court to control the scope and extent of cross-examination, *Balfour v. State*, (1981) Ind., 427 N.E.2d 1091, we find no abuse of discretion by the trial court. The proffered examination concerned Mrs. Williams' awareness of the underlying circumstances of her son's arrest at her home in April of 1980. However, the fact of an arrest does not necessarily contradict the victim's employment, his activities and financial status on the day of the subject incident, or that he was soft-spoken and that she, his mother, relied upon him. Nor does Rose in his argument explain the contradictory or impeaching nature of his proffered cross-examination. Therefore, we fail to find Rose was prejudiced by the limitation on his cross-examination of Mrs. Williams.

## III

■ Finally, Rose argues his seven year sentence is manifestly unreasonable.

We are unable to review this assigned error due to the trial court's apparent failure to adhere to the mandate of I.C. 35–50–1A–3 (35–4.1–4–3) (Burns Code Ed., Repl. 1979). The record before us is devoid of the written statement of the trial court detailing the reasons for the selection of Rose's aggravated sentence. *Kern v. State*, (1981) Ind., 426 N.E.2d 385; *Page v. State*, (1981) Ind., 424 N.E.2d 1021 (review after remand).

This cause is remanded to the trial court to state its reasons for enhancing the basic sentence, or alternatively, to modify the sentence. In all other respects the judgment is affirmed.

BUCHANAN, C. J., and SULLIVAN, J., concur.